# KOBRE & KIM LLP

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL 212.488.1200
FAX 212.488.1220
WWW.KOBREKIM.COM

May 19, 2006

**BY HAND DELIVERY**

Honorable Denny Chin
United States District Court
Southern District of New York
500 Pearl Street, Room 1020
New York, New York 10007

        **Re:**    **United States v. Tongsun Park**
                S3 05 Cr. 59 (DC)

Dear Judge Chin:

We represent Defendant Tongsun Park in the above-referenced matter. We write to respectfully request that the Court convene a conference to determine: (1) whether the trial date (currently set for June 20, 2006) should be adjourned or (2) whether in the alternative all late-produced documents should be precluded from being offered by the Government at the trial. We recognize that the Court has denied a previous request for an adjournment of the trial date, and thus we do not submit this second application lightly. As explained below, our application is prompted by new circumstances – late production of discovery as well as a superseding indictment that was apparently filed in the last few days.

*Late Produced Discovery.* This request was made necessary because the Government has made seven late discovery productions – the latest of which was May 15, 2006. Since the April 21, 2006 discovery cut-off date, the Government produced over 13,500 pages of Rule 16 materials: 10,000 pages of documents were produced approximately two weeks past the Court-imposed deadline; and 3,500 pages of documents were produced nearly three weeks after the deadline. (See Government's letters dated April 28, May 2, May 3, May 8, May 10, May 12, May 15, 2006 (all acknowledging documents as Rule 16 materials), attached hereto as Exhibit A.)[1]  As

---

[1] On May 5, 2006, we requested additional time to file pretrial motions after receiving the first batch of late-produced documents, which were delivered to us only a few days before the motions deadline. At that time, we obviously had not had a chance to review the late production closely to determine whether a trial adjournment application was warranted, so we did not submit such an application at that time. Having now reviewed the materials more closely, it is clear that a significant adjournment is necessary to ensure that Mr. Park receives a fair trial.

Hon. Denny Chin
May 19, 2006
Page 2

explained in greater detail below, it is apparent from the face of these documents that the Government had been in possession of these late-produced materials for quite some time and there is no apparent justification for why the Government waited until after the discovery cut-off date to produce these materials.

These late productions are contrary to the Court's mandate that all discovery be produced by April 21, 2006. In addition, the late production of materials that were plainly in the possession of the Government for quite some time is especially unfair given that the Government obtained the current trial date of June 20, 2006 by representing to the Court at the March 1, 2006 conference that all discovery had been produced. At that conference the Government represented that it had produced all materials in its possession: "Mr. Park has all of his discovery that is in our possession. *There's no more discovery to be produced to him.* Obviously, we'll continue to produce discovery *as we get it* to all defendants." (See March 1, 2006 *United States v. Chalmers* Court Conference Transcript at 20, attached hereto as Exhibit B (emphasis added).) Notwithstanding that representation, the Government has since produced over 13,500 pages of documents – documents it had prior to the March 1 conference – that raise significant new issues for the defense.

Had the Government informed the Court and defense counsel of the existence of these documents at the March 1 conference, the Court would obviously have given defense counsel an opportunity to review the materials and inform the Court as to how much time would be required to prepare a defense. Instead, the Government persuaded the Court to set a June 20 trial date by arguing that all discovery had been produced and that Mr. Park had no real investigation he needed to conduct because the case was just about "cash drops." Subsequently, the Government sat silent as Mr. Park attempted unsuccessfully to persuade the Court that additional time was needed, never mentioning to the Court that it was planning to produce a significant amount of discovery past the Court-imposed deadline. As it turns out, the Government had some 13,500 pages of significant documents that it was holding at the time, and those documents raise significant issues far more complex than simple cash drops.

Finally, in the alternative, if the Court does not grant Mr. Park a continuance, then it should preclude the Government from offering the late-produced documents at trial. Such a remedy, although insufficient to give Mr. Park time to investigate the new facts contained in these late-produced documents that might assist in his defense, would at least prevent the Government from benefiting from the time pressure under which Mr. Park has been placed.

*Superseding indictment.* The Government informed us earlier this week that it had obtained a superseding indictment containing an asset forfeiture count seeking $2,500,000 of substitute assets from Mr. Park (attached as Exhibit C hereto). This modification to the indictment raises a number of new issues.

Hon. Denny Chin
May 19, 2006
Page 3

First, Mr. Park now faces the prospect of losing $2,500,000 in addition to his freedom and should be given additional time to prepare a defense to the newly-added asset forfeiture allegations in this case. The superseding indictment seeks to prove that Mr. Park or his co-conspirators (as yet unidentified) received $2,500,000 as criminal proceeds from the underlying offense, and seeks to hold Mr. Park liable for the entire amount under a "joint and several liability" standard. Mr. Park needs to prepare a defense case attempting to refute the allegations that such payments were proceeds of a crime, and contending that the amounts cited by the Government are incorrect.

Second, as provided for in Federal Rule of Criminal Procedure 32.2(b)(4), Mr. Park is entitled to a jury trial on the allegations raised in the newly-added asset forfeiture count – a trial that by law is required to be bifurcated from the main trial and now adds both to the length and complexity of the trial. Mr. Park should be given an opportunity to prepare for this second phase of trial that he had not anticipated previously.

## I.   The Government's Late Production of Discovery Warrants An Adjournment Of The Trial Date.

### A.   Applicable Legal Standards.

Although the Government's failure to abide by discovery orders or Rule 16 can have dramatic results, see United States v. Thomas, 239 F.3d 163 (2d Cir. 2001) (granting a new trial where the prosecution violated Rule 16 by failing to produce the defendant's prior statement); United States v. McElroy, 697 F.2d 459, 465-66 (2d Cir. 1982) (government's failure to comply with Rule 16 required reversal of conviction and new trial), ordinarily, a continuance is the preferred sanction for a discovery delay because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure. United States v. Euceda-Hernandez, 768 F.2d 1307, 1313 (11th Cir. 1985) ("In most instances, particularly where the evidence is disclosed before the jury is sworn and the trial begins, a brief a continuance, to allow counsel to confer with his client or restructure his trial strategy, will eliminate any prejudice the belated discovery may have worked. Even where, as here, further investigation is required, the suppression of the evidence may turn out to be altogether unnecessary."); United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002) (finding a continuance was the proper remedy where the prosecution provided discovery nineteen days before trial and holding that "[t]he preferred sanction is a continuance" for the government's violation of a discovery order); United States v. Wicker, 848 F.2d 1059, 1062 (10th Cir. 1988) ("A continuance may normally be the most desirable remedy for the government's failure to comply with a discovery order.").

The above cases are consistent with Rule 16 itself, which specifically provides that the Court may grant a continuance, among other sanctions, for a failure to abide by

Hon. Denny Chin
May 19, 2006
Page 4

the rule. Fed. R. Crim. P. 16(d)(2) ("If a party fails to comply with this rule, the court may: …(B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.").

For example, in a prosecution for submission of false or fraudulent statements, the trial court did not abuse its discretion in granting a continuance for the government's late production of exhibits so that the exhibits could be examined, their authenticity could be determined, and defenses prepared to meet them. United States v. Schreiber, 449 F.Supp. 856, 865 (W.D.Pa. 1978); see also United States v. Dog Taking Gun, 7 F.Supp. 2d 1118 (D.Mont. 1998) (continuance of trial, rather than suppression of evidence produced after the discovery deadline, was warranted as a discovery sanction, considering that the continuance would allow defendant, who denied culpability, sufficient time to have the evidence independently tested, and give his lawyers time to prepare his defense); see also Euceda-Hernandez, 768 F.2d at 1312 ("Among the factors the court must weigh are the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess.") (emphasis added).

Based on these principles, the Second Circuit recognized: "'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" United States v. Ellenbogen, 365 F.2d 982, 985-86 (2d Cir. 1966); see also United States v. Fernandez, 898 F.Supp. 82, 85 (N.D.N.Y. 1995) (granting continuance where "[d]efendant's 'myopic insistence upon expeditiousness' [was] the only thing that restrained what appeared to be, and was, a legitimate request for delay in this case"). This principle is particularly apt here: this is not a case where the defendant is out on bail and is looking to "avoid the inevitable." Mr. Park is currently incarcerated. Despite that incarceration, where there has been no finding of guilt, Mr. Park believes it is worth spending more months in jail so that his counsel may adequately prepare for his defense. Under the circumstances, especially having produced discovery past the Court-imposed deadline without any justification aside from its own neglect, the Government is in no position to complain.

**B.     The Government Produced Rule 16 Materials Late Even Though These Materials Had Been In The Government's Possession Long Before The Discovery Cut-Off Date.**

Nearly two weeks after the discovery cut-off deadline, the Government produced documents "relating to Phoenix International, L.L.C., Samir Vincent, and Mr. Vincent's activities as an unregistered agent of the Government of Iraq [SV 498 - SV 10581]," "correspondence to and from Iraqi officials, and related materials [Bates numbered IIC-SDNY 005602 through IIC-SDNY 005618]," and "United Nations documents dating from 1996 and related to the establishment of the United Nations Office of Iraq

Hon. Denny Chin
May 19, 2006
Page 5

Programme, Oil-for-Food [Bated numbered IIC-SDNY 009525 through IIC-SDNY 009726]," all of which are documents that should have been produced with the Government's other Rule 16 materials. (Letters from Government, May 2, 2006, May 3, 2006.) Moreover, from the face of the documents, it appears that the Government had these materials in its possession for some time, as many of the documents were apparently produced by Samir Vincent, the Government's cooperating witness who pled guilty and began working with the Government approximately a year ago.

Over a week later, and almost three weeks after the discovery deadline, the Government produced over 3,500 pages of documents "relating to Phoenix International, L.L.C., Samir Vincent, and Mr. Vincent's activities as an unregistered agent of the Government of Iraq [SV 10582 - SV 14123]." Although this appears to be material that the Government would have had prior to the discovery cut-off date, and certainly at the time of its May 2 and May 3 productions, the Government failed to disclose what it concedes is Rule 16 material until May 10. (Letter from Government, May 10, 2006.)

### C.   The Late-Produced Documents Raise Significant Issues For Mr. Park's Defense Counsel To Investigate.

A review of those documents has raised significant new issues that require additional investigation and development before Mr. Park will be able to mount a full defense to the Government's anticipated claims.

The new documents directly bear on the issue of whether the monies that Mr. Vincent received from the Iraqi Government actually relate to the conspiracy alleged in this Indictment. Mr. Vincent is alleged to be Mr. Park's co-conspirator and is expected to testify that he received monies from the Iraqi Government in connection with the conspiracy alleged in the Indictment. Accordingly, the factual issue of what other business activities were conducted by Mr. Vincent relating to Iraq becomes extremely important, because any one of these other activities could provide an explanation for the funds received by Mr. Vincent. If the jury were to conclude that the money that Mr. Vincent passed on to Mr. Park were actually related to a business transaction unconnected to the conspiracy alleged in the Indictment, the jury might well find that Mr. Park was not a participant in the conspiracy alleged in the Indictment but rather a participant in one of Mr. Vincent's numerous other business transactions involving Iraq.

For example, the documents produced by the Government after the discovery cut-off date establish that Mr. Vincent contracted with various oil corporations during and after his dealings with Mr. Park and that Mr. Vincent and his company had many dealings in Iraq. (E.g. Draft letter from Samir Vincent, to Oscar Wyatt, July 1, 1993, SV 3100, ("Coastal Oil retains Phoenix International as a consultant to assist in the award of a contract to your company for the purchase of petroleum and petroleum products from the Government of Iraq if and when the United Nations permits the legal sale of oil under

Hon. Denny Chin
May 19, 2006
Page 6

appropriate Resolutions, the proceeds from which will be used by the United Nations for the humanitarian relief of all the peoples of Iraq."), Letter from Mohamad Ajami, Berwyn Industries Corp., to Premier Oil plc, June 22, 2001, SV 6146, (Mr. Ajami authorizes Mr. Vincent to execute on behalf of Berwyn a renewal addendum of Berwyn's 1998 agreement with Premier Oil), Letter from Wm. Boyd Lyons, The Friendship Force Foundation, to Carl Corrallo, The Costal Corporation, February 5, 1997, SV 1486, (Friendship Force will "donate 95 percent of the funds to the Saharawan Aid Trust in London, England to purchase and ship powdered infant milk to needy children in Iraq....We acknowledge that this gift is made by The Costal Corporation without promise or expectation of any personal benefit."), attached hereto as Exhibit D.)

To fully investigate the new facts contained in the late-produced documents, however, Mr. Park requires sufficient time to subpoena records from those corporations (which number over a dozen) to determine the nature and extent of Mr. Vincent's activities with those organizations, some of which are located abroad and will require the issuance of letters rogatory. Given the time period that those documents cover (over ten years) and the number of possible transactions involved, a thorough investigation of these facts – which is crucial to Mr. Park's defense – can be expected to take many months.

Moreover, if forced to condense that investigation into a few short weeks, even if that were possible (and where foreign discovery is concerned the Court is well aware that it is not), that would essentially force defense counsel to choose between investigating a possible defense that could exculpate Mr. Park, or preparing for other aspects of the trial. Mr. Park should not be placed in such a prisoner's dilemma, especially where it is the Government's delinquent productions that placed Mr. Park in that position.

Moreover, an adjournment would also serve the added function of allowing Mr. Park more time to obtain evidence residing outside of the United States that defense counsel previously brought to the attention of the Court. For example, on May 10, 2006, Mr. Park requested letters rogatory so that he may obtain evidence from Maurice Strong, who could provide Mr. Park with evidence that would directly rebut many of the central allegations in this case. As defense counsel attempts to secure responses from other witnesses regarding whether such witnesses will cooperate voluntarily, we expect to submit additional applications for other letters rogatory.[2]

## II.     The Superseding Indictment Warrants An Adjournment.

---

[2] We have not submitted all our letters rogatory requests yet because the applicable law requires that defense counsel be informed by the prospective witness in some definite manner that such witness will not cooperate voluntarily, before defense counsel is permitted to seek the Court's assistance in this cumbersome legal procedure.

Hon. Denny Chin
May 19, 2006
Page 7

As the Court can see from the attached superseding indictment, Mr. Park now faces the prospect of losing $2,500,000 in addition to his freedom if he is convicted. The superseding indictment warrants an adjournment for two reasons.

First, Mr. Park must now prepare a defense to persuade the jury that the sums received by him and his alleged co-conspirators were not proceeds of a crime. Whereas under the previous Indictment, Mr. Park was required only to defend against an allegation that he conspired with others to pursue certain illegal goals, now we must specifically analyze and argue that particular payments of money were not proceeds of the alleged scheme – something we were not required to do before.

Second, Mr. Park requires additional time to prepare and the Court will likely need to reconsider whether this case fits into its calendar for June 20 since the trial itself is now bound to be longer and more complicated. Federal Rule of Criminal Procedure 32.2(b)(4), which deals with criminal asset forfeiture, provides in relevant part:

> Upon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

The issue of whether criminal asset forfeiture is warranted would be conducted at a bifurcated trial proceeding after the conclusion of the main case. We expect that some evidence relating to the asset forfeiture allegation (for example, evidence that Mr. Park was carrying certain sums of cash in 2006, which is alleged in the superseding indictment in the asset forfeiture allegations) would not be admissible in the main trial. Thus, the second phase of trial contemplated in Rule 32.2(b)(4) would require additional testimony and cross examination, not simply additional deliberations.

## III.    If The Court Does Not Grant An Adjournment, It Should Preclude The Government From Offering This Evidence At Trial.

Although Mr. Park believes that a continuance is a proper remedy in this circumstance, to the extent that the Court denies that request, Mr. Park requests in the alternative that the Government be precluded from offering the late-produced documents at trial.

Such a request is within the Court's power and is warranted in this case where the Government caused the defendant prejudice by failing to produce documents in a timely manner. Wicker, 848 F.2d at 1062 ("[I]n view of the district court's pressing schedule, the status of the present case, and the failure of a prior continuance and deadlines to ensure timely discovery; the court concluded that a second continuance would not compensate for the prejudice imposed upon the defendants. In light of the district court's consideration of the relevant factors and our review of the record, we cannot say that the

Hon. Denny Chin
May 19, 2006
Page 8

district court abused its discretion in suppressing the government's evidence."); <u>United States v. Davis</u>, 244 F.3d 666 (8th Cir. 2001) (excluding DNA evidence for government failure to abide by discovery order); <u>United States v. McElroy</u>, 697 F.2d 459, 463 (2d Cir. 1982) (reversing conviction for violation of Rule 16(a) and holding that the "government's failure to disclose prejudiced [defendant]'s defense and deprived him of a fair trial"); <u>United States v. Katz</u>, 178 F.3d 368 (5th Cir. 1999) (decision to sanction government by excluding high quality, color images delivered to child pornography defendant was not an abuse of discretion where only poorer quality, black and white copies of the same images were produced during discovery in an attempt to "<u>sandbag</u>" defense) (emphasis added).

While it is clear that Mr. Park will suffer prejudice if the Government is allowed to use the documents – and Mr. Park is not provided an adjournment to investigate the new matters raised by those documents – the Court could preclude the use of the documents even where there has been no prejudice. <u>Wicker</u>, 848 F.2d at 1061 (10th Cir. 1988) ("On occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced.") <u>citing</u> <u>United States v. Campagnuolo</u>, 592 F.2d 852, 858 (5th Cir. 1979) (there is no abuse of discretion when "a district judge for prophylactic purposes suppresses evidence that, under a valid discovery order, the government should have disclosed earlier, even if the nondisclosure did not prejudice the defendants").

In <u>Wicker</u>, the Tenth Circuit held that the district court did not abuse its discretion in suppressing the Government expert's testimony and laboratory report, reflecting results of tests performed on materials confiscated from the defendants' room, as a sanction for Government's failure to comply with a discovery order. <u>Wicker</u>, 848 F.2d at 1061-62. The Court held that the Government expert's failure to send copies of the report to the Government as requested was not sufficient to justify the delay, the defendants were prejudiced by Government's noncompliance, and granting second continuance to allow defendants time to review and rebut report would not compensate for prejudice imposed upon them.

As in <u>Wicker</u>, there is simply no excuse for the Government's deficient production. Many of the documents recently produced have been stamped with the prefix "SV" and relate to Samir Vincent and his business dealings. Mr. Vincent, however, pled guilty long before the discovery cut-off date in this case and the Government simply cannot have any good reason for having failed to produce documents on a timely basis – or disclose the existence of unproduced documents at the March 1 conference before Your Honor – other than to "sandbag" Mr. Park. These acts have unquestionably prejudiced Mr. Park. Mr. Park is now left in the untenable position of being precluded from fully investigating defenses that could fully exculpate him because of the Government's failure to live up to its obligations. The Court should not countenance such behavior.

Hon. Denny Chin
May 19, 2006
Page 9

 

 

Accordingly, if the Court does not believe a continuance is appropriate under the circumstances, then Mr. Park respectfully requests that the Court: (1) order the Government to explain when it acquired various documents produced to the defense after the discovery cut-off date; and (2) to the extent that the Government had access to such documents prior to the discovery cut-off date, preclude the Government from offering such evidence at trial.

*            *            *

Based on our review and preparation to date, we estimate that the defense portion of this case will require approximately one week of testimony, assuming we are given the opportunity to obtain the witnesses and documents that exculpate Mr. Park. Given the Government's estimation of two weeks for its case in chief, and adding some time for cross examination by defense counsel, as well as the estimate of one week for the defense case and the bifurcated trial required by the asset forfeiture allegations in the superseding indictment, the estimated length of trial is closer to four weeks in our view.

For the reasons set forth above, we respectfully request that the Court convene a conference to determine whether an adjournment should be granted or whether the June 20 trial date should be maintained provided that the Government is precluded from offering the late-produced documents into evidence.

Respectfully submitted,

Michael S. Kim<br>212.488.1201

Steven W. Perlstein<br>212.488.1237

Leif T. Simonson<br>212.488.1236

cc:     Stephen A. Miller, Assistant United States Attorney (by email)
        Edward O'Callaghan, Assistant United States Attorney (by email)
        Michael Farbiarz, Assistant United States Attorney (by email)
        David Segal, Esq. (by email)
        Christopher W. Chan, Esq. (by email)